**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILLIP BERRY, | ) | CASE NO. 1:18-cv-01906 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Philip Berry (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On December 19, 2014, Plaintiff applied for SSI, alleging a disability onset date of July 5, 2012. (R. 9, PageID# 243). The application was denied initially and upon reconsideration, and

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 84-114). Plaintiff participated in the hearing on June 5, 2015. (Tr. 30-62). On November 16, 2015, the ALJ found Plaintiff not disabled. (Tr. 25). On March 17, 2016, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On May 20, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision in Case No. 1:16-cv-1228. On December 15, 2016, the prior decision was vacated pursuant to a Joint Motion for Remand.

After the District Court's remand, Plaintiff, represented by counsel, appeared and testified at a hearing on August 15, 2017. A vocational expert ("VE") also participated and testified. On November 9, 2017, the ALJ found Plaintiff not disabled. (Tr. 2833). On June 27, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 2814-2817). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 14).

Plaintiff asserts a single assignment of error, asserting substantial evidence does not support the determination that Plaintiff can perform light work. (R. 11).

## II. Evidence

**A. Relevant Evidence**[1]

1. **Treatment Records**

On August 10, 2014, Plaintiff's diagnoses included alcohol abuse, transaminitis, concern

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes primarily the opinions of several medical sources who offered opinions regarding Plaintiff's functional limitations, as those opinions form the basis of Plaintiff's assignment of error.

for malingering, diabetes mellitus type II, left lower extremity pain, chronic pancreatitis, and fatty liver. (Tr. 1547; R. 9, PageID# 1608). Plaintiff was noted as having left leg soreness, which did not prevent him from performing his daily activities. (Tr. 1549; R. 9, PageID# 1610). "[T]here were concerns for malingering and manipulative behavior during this admission as he enjoying [sic] staying in the hospital and didn't want to go to a homeless shelter." *Id*.

On October 21, 2014, Plaintiff was admitted for domiciliary care "for continuing care of homelessness, polysubstance abuse, lack of adequate income, and medical concerns." (Tr. 1533; R. 9, PageID# 1594). Plaintiff was discharged on January 15, 2015, due to positive alcohol test and violation of domiciliary protocols. *Id*.

On March 20, 2015, Plaintiff saw Clifford Packer, M.D., who assessed hypertension (controlled), diabetes mellitus (questionable control), history of substance abuse, extensive tinea corporis, and peripheral neuropathy due to diabetes and/or alcohol, which was no longer responding to medication. (Tr. 1557-1564 ; R. 9, PageID# 1618-1625).

On March 31, 2015, progress notes from social worker Celia A. Smith state as follows:

> [Plaintiff] met with [social worker "SW"] requesting a letter from his [primary care physician "PCP"] stating he is no longer employed [due to patient's] medical conditions. [Plaintiff] stated he has a claim in for Social Security benefits; [his] first claim was denied. [Plaintiff] now has an attorney who is filing an appeal. [Plaintiff] needs a letter from PCP to go along with his appeal. [Plaintiff] stated he also needs the letter to submit to Veterans Service Commission for temporary financial assistance. [Plaintiff] stated the "neuropathy in my legs is getting worse" stating walking is becoming more of a challenge. [Plaintiff] requesting a cane. SW contacted covering PACT [registered nurse] who agreed to place consult. [Plaintiff] will p/u his cane today from Prosthetics.

(Tr. 1554, PageID# 1615). On the same date, nursing notes indicate that Plaintiff requested a prosthetic consult for a cane, and a "[p]rosthetic consult [was] placed per policy." (Tr. 1553; R. 9, PageID# 1614).

On September 21, 2015, an EMG nerve study was performed on Plaintiff, who had complained of tingling bilaterally in the lower extremities. (Tr. 2810-2811; R. 9, PageID# 2871-2872). According to Daniel Tran, M.D., there was "evidence of a distal symmetric peripheral polyneuropathy of bilateral lower extremities," but "[t]here are no signs of active denervation." *Id*. The EMG also revealed "evidence of an S1 radiculopathy on the left with signs of active denervation." *Id*.

2. **Opinions Concerning Plaintiff's Functional Limitations**

State Agency physician Linda Hall, M.D., reviewed the evidence of record and completed a physical RFC assessment, on January 16, 2015. (Tr. 80-82; R. 9, PageID# 141-143). She opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours and sit for 6 hours each in an 8-hour workday; occasionally climb ramps/stairs, stoop, crouch, and crawl; frequently balance and kneel; and never climb ladders/ropes/scaffolds. *Id*. She assessed no manipulative, visual, or communicative limitations. *Id*. However, Plaintiff had to avoid all exposure to hazards. *Id*.

On April 8, 2015, State Agency physician Dimitri Teague, M.D., reviewed the evidence of record and completed a physical RFC assessment. (Tr. 89-91; R. 9, PageID# 150-152). His assessment mirrored Dr. Hall's above assessment. *Id*.

On September 13, 2015, Ingrid Barcelona, CNP, completed a checkbox-style physical RFC form indicating that Plaintiff could occasionally lift/carry 10 pounds and less than 10 pounds frequently; stand/walk for 2 hours; sit for 3 hours; and needed to alternate positions after 30 minutes. (Tr. 2807, PageID# 2868). The entire explanation for the above assessed limitations was "[n]europathy, fatigue, hip pain, severe osteoarthritis." *Id*. She further indicated that Plaintiff could occasionally reach (including overhead) and perform gross and fine manipulation, but

4

could feel and push/pull less than occasionally.[2] (Tr. 2808, PageID# 2869). The basis for the above assessed limitations was "[d]iabetes, peripheral neuropathy, severe osteoarthritis, DJD, arthritis of the knee." *Id*.

**B. Relevant Hearing Testimony**

During the August 15, 2017 hearing, Plaintiff testified as follows:

- He had been enrolled at Cuyahoga County Community College but stooped going because his commute time was 1.5 hours each way and his knees hurt all the time. (Tr. 2843-2844).

- He worked at Giant Eagle grocery store from August to October of 2016 as a lot attendant, but stopped working due to knee pain. (Tr. 2845).

- He always uses a cane, except in his apartment where it is flat. (Tr. 2845).

- He was given the cane four to five years earlier by a social worker. (Tr. 2845-2846).

- Plaintiff's counsel noted that at the previous hearing, Plaintiff had testified the cane was prescribed by a Dr. Packer from the VA. Plaintiff specifically stated the cane was from a social worker, and not Dr. Packer. (Tr. 2847).

- His knees had been bothering him for ten years, and he received a knee brace three years ago. He received the knee brace from a pain management doctor at the VA. (Tr. 2848).

- He has diabetes, which resulted in neuropathy, and sees a podiatrist. He was prescribed Lyrica. (Tr. 2848-2849).

- He also experiences lower back pain that radiates to his hips. (Tr. 2850).

- He can stand with his cane for thirty minutes before needing to sit, and can walk for twenty minutes with his cane. (Tr. 2850).

- He has been told that he is too young for knee replacement surgery. (Tr. 2854).

The ALJ posed the following hypothetical question to the VE:

> [C]onsider a person of the Claimant's age, education and past relevant work activity, I'm going to give you two hypotheticals. The first is with the capacity for

---

[2] The form does not define what is meant by "occasionally," "frequently," or "less than occasionally." (Tr. 2807-2808).

light work who could occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, who could frequently balance, occasionally stoop, kneel, crouch, crawl but who would have to avoid all exposure to hazards such as industrial machinery and unprotected heights.

(Tr. 2856).

The VE testified that such an individual could perform the following jobs: mailing clerk, Dictionary of Occupational Titles ("DOT") 209.687-026 (106,300 jobs nationally); packer, DOT 559.687-074 (100,000 jobs nationally); and, sorter, DOT 727.687-062 (101,500 jobs nationally). (Tr. 2856).

The ALJ also inquired about the impact of the use of a cane for standing and walking. (Tr. 2856-2857). The VE testified that such a restriction would eliminate all light work, but identified the following sedentary jobs that such an individual could perform: final assembler, DOT 713.687-018 (102,500 jobs nationally; charge account clerk, DOT 205.367-010 (96,400 jobs nationally); and, sorter, DOT 521.687-086 (102,400 jobs nationally). (Tr. 2857).

Plaintiff's counsel also posed a hypothetical question to the VE as follows:

> [A]ssume a hypothetical individual the same age without past work experience and same education profile as the Claimant. He's limited to lifting 10 pounds occasionally, less than 10 pounds frequently; can stand and/or walk with the use of a cane for two hours in an eight-hour workday; can sit for about three hours in an eight-hour workday.

(Tr. 2857). The VE testified that such an individual was unemployable. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since

> December 9, 2014, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: diabetes mellitus, spine disorders, peripheral neuropathy, and alcoholism (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that prior to April 27, 2016, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can frequently balance. He can occasionally stoop, kneel, crouch or crawl. He should avoid all exposure to hazards, such as industrial machinery and unprotected heights.
>
> 5. The claimant has no past relevant work (20 CFR 416.965),
>
> 6. The claimant was born on ***, 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (20 C.F.R. § 416.963).
>
> 7. Claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed prior to April 27, 2016 (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 2014, through April 27, 2016 (20 CFR 416.920(g)).[3]

(Tr. 2823-2833; R. 9, PageID# 2884-2894).

---

[3] According to Plaintiff's brief, he has been found disabled as of April 2016. (R. 11, PageID# 3381).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

In the sole assignment of error, Plaintiff argues that the ALJ's RFC finding—that plaintiff can perform light work—is not supported by substantial evidence. (R. 11, PageID# 3363-3369). A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating

physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

At the fifth and final step of the disability analysis, if a claimant cannot perform his past relevant work, it must be determined whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). In other words, if the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

Although Plaintiff asserts one assignment of error, it includes several components. First, Plaintiff takes issue with the ALJ's decision to accord great weight to the opinions of the State Agency physicians, primarily because they were rendered before EMG testing was performed in September of 2015. (R. 11, PageID# 3366). Plaintiff, however, has failed to present any meaningful argument demonstrating why the EMG results required the ALJ to assign less weight to the State Agency physicians' opinions. *Id.* Nor does Plaintiff cite any law suggesting a remand is appropriate under such circumstances. To the contrary, "[t]here is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D. Ohio Jan. 9, 2013), *report and recommendation adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013); *accord Wagner v. Comm'r of Soc. Sec.*, No. 3:17CV310, 2018 WL 1449150, at *11 (N.D. Ohio Mar. 23, 2018) (same).

Plaintiff also cites an inapposite decision, *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-409 (6th Cir. 2009), which held that an ALJ erred by failing to adequately explain the

reasons for rejecting the opinions of three separate treating sources.[4] Although Plaintiff suggests that the ALJ erred by ascribing greater weight to the opinions of State Agency physicians, who are by their very nature non-examining sources, than to a treating source, Plaintiff fails to identify any "treating source" whose opinion conflicted with those of the State Agency physicians. (R. 11, PageID# 3366-3369).

Instead, Plaintiff insinuates that nurse Barcelona constitutes a "treating source" simply because she treated Plaintiff, but that overlooks the well-known fact that "treating source" is a term of art in the social security context. (R. 11, PageID# 3366-3369). "A treating source is a physician, psychologist, or other acceptable medical source who has provided the claimant with medical treatment or evaluation and has had an ongoing relationship with the claimant." *Porter v. Comm'r of Soc. Sec.*, 634 Fed. Appx. 585, 586 (6th Cir. 2016) (citing 20 C.F.R. § 416.902) (noting that an individual did "not qualify as a treating source because she [was] not a physician, psychologist, or other acceptable medical") The regulations unambiguously state that nurse practitioners are only to be considered "acceptable medical sources" for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.902(a)(7). Here, Plaintiff's claim was filed in December of 2014. Consequently, nurse Barcelona cannot be considered an "acceptable medical source," and was properly characterized as an "other source." *McNamara v. Comm'r of*, No. 15-1231, 2015

---

[4] After finding error with respect to the ALJ's lack of consideration of several treating physicians, who are considered "acceptable medical sources" per the regulations, the Sixth Circuit observed that "the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error." *Blakley*, 581 F.3d at 409. The Court merely explained that the decision should reflect that the ALJ at least considered the "over 300 pages of medical evidence reflect[ing] ongoing treatment and notes by Blakley's treating sources" before giving greater weight to the non-examining physicians over the treating physicians. *Id.* Plaintiff's reliance on *Blakely* is misplaced because Plaintiff does not identify any *treating physician* opinions that post-date the state agency sources that were perfunctorily rejected by the ALJ.

WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (*per curiam*) (citing 20 C.F.R. § 416.913(d)(1)); SSR 06-3p, 2006 WL 2329939, at *2; *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015). It therefore follows that because nurse Barcelona was not an acceptable medical source that she cannot be considered a treating source either. Thus, Plaintiff has failed to identify any inconsistency between the ALJ's decision and the *Blakely* holding.

Plaintiff further ignores the fact that the ALJ expressly discussed the opinion rendered by nurse Barcelona, declined to extend it significant weight, and explained the reasons for doing so. Notably, with respect to nurse Barcelona, the decision states as follows:

> On September 3, 2015, nurse practitioner Ingrid Barcelona, CNP opined that the claimant could lift and/or carry ten pounds occasionally and less than ten pounds frequently (Exhibit 3F/2). He could stand and/or walk a total of 2 hours in an 8-hour workday. He could sit about 3 hours in an 8-hour workday. He can sit for 30 minutes at a time and he would need to lie down at unpredictable times during a work shift. He could occasionally reach, handle and finger (Exhibit 3F/3). He could less than occasionally feel, push and pull. He would be absent from work more than 3 days per month. Ms. Barcelona provided only diagnoses as the basis of her opinion and she did not cite objective diagnostic findings or examination findings. Ms. Barcelona's opinion is not supported by the record evidence as a whole and it is inconsistent with the opinions of both state agency medical consultants; as such, the undersigned accords it little weight.

Plaintiff's brief does not argue that the ALJ failed to explain the weight ascribed to her opinion or otherwise argue that the explanation was legally deficient. (R. 13).

Finally, Plaintiff suggests the hypothetical question the ALJ posed to the VE was incomplete because it did not incorporate nurse Barcelona's opinion or Plaintiff's alleged need for a cane. (R. 11, PageID# 3369). Consequently, Plaintiff argues, the RFC failed to account for all of his limitations. However, Plaintiff's argument is based on the erroneous and untenable premise that the ALJ was bound to accept nurse Barcelona's opinion. The ALJ was not. No error

can be gleaned from an ALJ's decision not to incorporate limitations into the RFC based on the opinions of medical providers whose opinions have been properly rejected. *See, e.g., White v. Comm'r of Soc. Sec.*, No. 3:13cv2106, 2014 WL 4983665 at *9 (N.D. Ohio Oct. 6, 2014) (finding that where the ALJ properly rejected a medical source's opinions, the ALJ was under no obligation to include the rejected limitations in the RFC or the hypothetical).

In addition, Plaintiff's brief contains an undeveloped argument suggesting the RFC should have included the need for a cane. Plaintiff's brief, however, does not address Social Security Ruling 96-9p ("SSR 96-9p") that requires clear medical evidence before the need for a cane may be incorporated into an RFC. SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996), provides as follows:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there **must** be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9p (emphasis added).

The ALJ's decision discussed Plaintiff's cane use in several different passages, indicating:

> The claimant testified at the hearing on August 2017. He said he has been using a cane for 4-5 years. He always uses it except in his apartment. It was given to him by a social worker at the Veterans' Administration (VA). The claimant said the social worker noticed he was having problems walking and thought it would help to stabilize his knee. The undersigned notes this testimony is inconsistent with VA records, which report the claimant requested a cane from a social worker (Exhibit 2F/23). It is also inconsistent with testimony at the hearing in 2015, when claimant said Dr. Packer at the VA prescribed the cane.
>
> Claimant testified his knees have been bothering him for 10 years. A pain management doctor at the VA gave claimant a knee brace three years ago. It is called an "unloader" brace. Claimant testified he wears the brace all the time. The claimant testified he has been told he is too young to have knee replacement surgery. However, records show he was not found to need knee surgery in May 2017 (Exhibit 5F/22).
>
> ***
>
> Claimant testified he is able to stand for 30 minutes with the cane and walk for 20 minutes with the cane.
>
> ***
>
> The record does not document impairment/impairments of a level of severity to justify ambulatory aids. The record does not contain the criteria outlined in SSR 96-9p; the use of a cane or other ambulatory aid cannot be considered medically required. To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded (SSR 96-9p ). In this case, the claimant requested the cane and there is a lack of documentation that claimant needs to use a cane. Claimant requested a cane from a social worker in March 2015; it was not prescribed (Exhibit 2F/23).
>
> Records do not show ongoing use of a cane. In August 2014 it was noted that x-rays of the left leg were negative. Claimant was able to walk a few blocks without becoming short of breath (Exhibit 2F/17). Claimant was not using a cane when he presented for aqua therapy on October 7, 2014 (Exhibit 2F/467). At an

> appointment on September 29, 2014, the claimant was noted to have a steady gait, despite complaining of 8/10 pain in his legs (Exhibit 2F/551). Claimant's gait was also normal on November 4, 2014 (Exhibit 1F/165). When claimant saw a podiatrist on March 18, 2015, he was ambulating in tennis shoes with OTC inserts (Exhibit 2F/45). Again, there is no mention of claimant using a cane. The record does not show claimant needs to use an assistive device.

(Tr. 2829).

The court finds no reversible error with respect to the ALJ's decision to omit the need for a hand-held assistive device from the RFC. SSR 96-9p essentially contains two requirements before an ALJ may conclude that a hand-held assistive device is "medically required." First, there must be medical documentation establishing the need for said device to aid in walking/standing; and second, the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)" 1996 WL 374185 at *7. Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (finding the record supported the ALJ's finding that a cane or crutch was *not* a "medical necessity" where the record contained only the claimant's self-reports of cane use and physicians' observations that claimant used a cane); *Blackburn v. Colvin*, No. 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751 at *15 (N.D. Ohio Mar. 11, 2015) (finding that a physician's mere observation that claimant used a cane was insufficient to establish the cane was a medical necessity because

physician's "treatment notes do not reflect a prescription for a cane") (McHargh, M.J.).[5]

Plaintiff's hearing testimony, on its own, does not qualify as medical documentation and is insufficient to establish that a cane was medically required. In addition, it is questionable whether even the social worker was offering an opinion that a cane was necessary rather than simply expressing that Plaintiff desired one. Finally, it is doubtful that a social worker's statement would qualify as medical documentation, as social security regulations do not recognize social workers as acceptable medical sources. *See, e.g., Marijanovic v. Comm'r of Soc. Sec.*, No. 17-1282, 2017 WL 8231367, at *1 (6th Cir. Oct. 30, 2017)(observing that a social worker does not qualify as an "acceptable medical source"); *Whitfield v. Comm'r of Soc. Sec.*, No. 15-6038, 2016 U.S. App. LEXIS 16627, *8 (6th Cir. Jun. 2, 2016) (finding that even a "licensed clinical social worker, is not an '[a]cceptable medical source[],' and thus cannot be considered a treating physician).

Even assuming *arguendo* that the medical documentation of record was sufficient to establish the first part of the SSR 96-9p test, none of the medical documentation cited by Plaintiff "describe[es] the circumstances for which [a cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Plaintiff fails to draw this court's attention to any *medical records documenting*

---

[5] Although Plaintiff testified that he needed a cane to ambulate throughout the claimed period of disability (Tr. 2845-2850), his testimony alone is insufficient under Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (Jul. 2, 1996) as discussed herein. *See, e.g., Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.")

*and describing the circumstances for which a cane is needed* as required by SSR 96-9p.[6] *See, e.g., Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (Limbert, M.J.) (*citing Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)).

Because Plaintiff has failed to demonstrate the medical documentation of record shows a hand-held assistive device is medically required under SSR 96-9p, his argument that the ALJ erred by omitting the need for a cane in the RFC is untenable.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 23, 2019

---

[6] While the court has reviewed pertinent portions of the nearly 3,300-page transcript identified by the parties, it has not found any medical documentation that could reasonably be construed as describing the circumstances for which a cane is needed. Nevertheless, the onus remains on Plaintiff and not the court to identify evidence supporting his assignments of error. *See, e.g., Paul v. Comm'r of Soc. Sec.*, No. 2:13cv14911, 2015 WL 1299980 at *1 (E.D. Mich. Mar. 23, 2015) ("[P]laintiff cannot simply make bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."); *Nash v. Comm'r of Soc. Sec.*, No. 1:12 CV 2234, 2013 WL 4736736, at *3 (N.D. Ohio Sept. 3, 2013) ("it is not this Court's function to scour the administrative record and craft arguments on Plaintiff's behalf."); *Crocker v. Comm'r of Soc. Sec.*, No. 1:08cv1091, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")